UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

SUN COAST CONTRACTING                                   CIVIL ACTION
SERVICES, LLC, ET AL.

VERSUS

DQSI, LLC, ET AL.                              NO.: 3:13-cv-00297-BAJ-RLB

RULING AND ORDER

Before the Court is Defendants' **MOTION FOR SUMMARY JUDGMENT AND OTHER RELIEF (Doc. 8-1),** seeking an order dismissing Plaintiff's claims with prejudice pursuant to Federal Rule of Civil Procedure ("Rule") 56, and further, assigning costs to Plaintiff.[1] (*Id.* at 1). Plaintiff opposes Defendants' motion.[2] (Doc. 15). Defendants have been allowed to file a reply to Plaintiff's opposition. (Doc. 22). Oral argument is not necessary. The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

I.     BACKGROUND

On March 10, 2010, the U.S. Army Corps of Engineers entered into a prime contract with Defendant DQSI to replace a "guidewall" at Bayou Sorrel Lock in the Atchafalaya Basin Floodway ("the project"). (Doc. 1 at ¶ 10). DQSI furnished payment and performance bonds on the project, with Defendant Western Surety Company, Inc., serving as surety. (*Id.* at ¶ 11). DQSI later entered into a

---

[1] "Defendants" are DQSI, LLC ("DQSI") and Western Surety Company, Inc.

[2] "Plaintiff" is United States of America *ex. rel.* Sun Coast Contracting Services, LLC ("SCCS").

Subcontract with Sun Coast Contracting, LLC ("Sun Coast Contracting"), whereby Sun Coast Contracting agreed to supply materials and labor for the project. (*Id.* at 4). Article 10 of the Subcontract stated:

> This Subcontract cannot be assigned by any Subcontractor without the express written consent of the Prime Contractor, which consent may be withheld by the Prime Contractor for any reason in its sole discretion.

(Doc. 8-3 at p. 3).

In December 2010, Sun Coast Contracting sold its assets—including its Subcontract with DQSI—to IPS Group, LLC ("IPS"). (Doc. 1 at ¶ 14). Thereafter, IPS created a new entity, which it named Sun Coast Contracting Services, LLC ("SCCS"), to which IPS assigned certain assets, including the Subcontract. At no time did DQSI consent to assignment of the Subcontract to IPS or to SCCS. Indeed, Defendants twice refused to consent to the assignment of the Subcontract. (Doc. 8-2 at ¶ 8; *see* Doc. 8-5 at p. 1). However, DQSI also accepted "materials and labor" from SCCS, though DQSI did not make any payments for said services. (Doc. 1 at ¶¶ 15, 35).

SCCS, Plaintiff here, filed suit under the Miller Act, 40 U.S.C. § 3133, alleging that Defendants defaulted on payments for services amounting to $1,694,576.56. (*See generally* Doc. 1). In response, Defendants filed the present Motion for Summary Judgment, arguing that Plaintiff is not the proper party to bring suit because DQSI never authorized assignment of the Subcontract. (Doc. 8-1). Plaintiff opposes the motion and raises various arguments for why the Defendants remain liable for payment, despite the Subcontract's anti-assignment provision.

2

## II.   STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). After a proper motion for summary judgment is made, the non-movant must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). "This burden is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (quotation marks and citations omitted). In determining whether the movant is entitled to summary judgment, the Court "view[s] facts in the light most favorable to the non-movant and draw[s] all reasonable inferences in her favor." *Coleman v. Houston Indep. Sch. Dist.,* 113 F.3d 528, 533 (5th Cir. 1997).

In sum, summary judgment is appropriate if, "after adequate time for discovery and upon motion, [the non-moving party] fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

## III.   LAW AND ARGUMENT

### a.  Validity of the Subcontract Assignment

The Miller Act provides a civil right of action for "[e]very person that has furnished labor or material in carrying out work provided for in a contract for which

3

a payment bond is furnished . . . and that has not been paid in full within 90 days after the day on which the person did or performed the last of the labor or furnished or supplied the material for which the claim is made."   40 U.S.C. § 3133(b)(1). Contractual claims under the Miller Act are interpreted according to state law. *See U.S. ex rel. Cal's A/C & Elec. v. Famous Const. Corp.*, 220 F.3d 326, 328–29 (5th Cir. 2000).

Defendants argue that Plaintiff's Miller Act claim fails because SCCS is not the proper party to bring suit for non-payment. *See* Fed. R. Civ. P. 17(a)(1) ("An action must be prosecuted in the name of the real party in interest."). Specifically, Defendants assert that SCCS is not "the real party in interest" because under the express terms of DQSI's Subcontract with Sun Coast Contracting, *any* assignment of the Subcontract required DQSI's express written permission, which DQSI never gave. Thus, any assignment of the Subcontract to SCCS was invalid. (Doc. 8-1).[3]

Article 10 of the Subcontract between DQSI and Sun Coast Contracting provides, in full:

> This Subcontract cannot be assigned by any Subcontractor without the express written consent of the Prime Contractor, which consent may be withheld by Prime Contractor for any reason in its sole discretion.

(Doc. 8-3 at p. 3). There is no ambiguity in this provision. Nor is there any evidence in the record that DQSI approved Sun Coast Contracting's assignment of the

---

[3] Defendants also argue that SCCS is not the proper party to bring suit because it is not Sun Coast Contracting's successor-in-interest. Specifically, Defendants argue that IPS's acquisition of Sun Coast Services did not conform to the requirements of Florida Statute § 608.4401 and/or Louisiana Revised Statute 12:1361 because "[Sun Coast Contracting] continued to operate as a separate business entity after the alleged purchase of assets in December 2010." (Doc. 8-1 at pp. 12–16). Defendants further argue that SCCS is not the successor-in-interest because it assumed *certain* debts of Sun Coast Contracting, but not all debts.   Because the Court determines that the assignment of the Subcontract is invalid, it does not address these other arguments.

4

Subcontract to IPS and/or SCCS.  Indeed, the evidence is directly to the contrary, indicating that DQSI expressly refused to authorize any assignment.  (Doc. 8-2 at ¶ 8; *see* Doc. 8-5 at p. 1).  Accordingly, Sun Coast Contracting's assignment of its Subcontract to IPS, and IPS's subsequent reassignment to SCCS were each invalid, and SCCS is not the proper party to bring this suit.  Fed. R. Civ. P. 17; *see* La. C.C.A. art. 2653 ("A right cannot be assigned when the contract from which it arises prohibits the assignment of that right."); *In re Katrina Canal Breaches Litig.*, 63 So. 3d 955, 962 (La. 2011) ("Article 2653 contemplates that the parties to a contract may contract to limit assignability."); *L & A Contracting Co., Inc. v. Ram Indus. Coatings, Inc.*, 762 So. 2d 1223, 1230 (La. 1st Cir. Ct. App. 2000) ("Legal agreements have the effect of law upon the parties, and as they bind themselves, parties shall be held to a full performance of obligations flowing therefrom."), *writ denied*, 775 So. 2d 438 (La. 2000).

In short, Sun Coast Contracting was bound to the Subcontract and its terms. Because there was no valid assignment, there is no contractual relationship between the Defendants and SCCS, the Plaintiff here.  Thus, Defendants have no contractual obligation to Plaintiff, and Plaintiff is the wrong party to bring a suit for nonpayment.

### b.  Plaintiff's Non-Contractual Claims

Anticipating the failure of its contractual argument, Plaintiff advances a variety of non-contractual claims.  For various reasons, each of these claims fail.

5

### i.  Unjust enrichment

First, Plaintiff seeks recovery on an unjust enrichment theory. However, Louisiana law is clear that a claim for unjust enrichment "will only be allowed when there is no other remedy at law." *Minyard v. Curtis Products, Inc.*, 205 So. 2d 422, 432 (La. 1967).  In other words, no unjust enrichment exists when the claim is based on a contract. *See Drs. Bethea, Moustoukas and Weaver, L.L.C. v. St. Paul Guardian Ins.*, 376 F.3d 399 (5th Cir. 2004). Here, Plaintiff's claim is based on nonpayment of services provided under a contract, albeit an improperly assigned contract. Thus, this claim is barred because there is a contractual remedy. *See id.*

### ii.  Detrimental Reliance

Plaintiff also claims detrimental reliance.  "To establish detrimental reliance, a party must prove three elements by a preponderance of the evidence: (1) a representation by conduct or word; (2) justifiable reliance; and (3) a change in position to one's detriment because of the reliance." *Suire v. Lafayette City-Parish Consol. Gov't*, 907 So. 2d 37, 59 (La. 2005).

Here, Defendants expressly refused to allow assignment of the Subcontract. Accordingly, Plaintiff cannot satisfy the first or second element of the test for detrimental reliance. *Id.*

### iii.  Waiver/Equitable Estoppel

Finally, Plaintiff asserts that because Defendants continued to accept services from Plaintiff, they are equitably estopped from relying on the anti-assignment provision, and/or have waived reliance on that provision. (Doc. 22 at 5).

"To raise an equitable estoppel, the record must establish not only that the pleader relied upon a representation or other conduct, but also that he was justified in so doing.  Justifiable reliance is fundamental." *Am. Bank & Trust Co. v. Trinity Universal Ins. Co.*, 205 So. 2d 35, 40 (La. 1967).  Here, Plaintiff's equitable estoppel claim fails because it could not have reasonably relied on the Defendants' performance after Defendants expressly refused to approve assignment of the Subcontract.

Plaintiff's waiver claim fails for similar reasons.  "Waiver occurs when there is an existing right, a knowledge of its existence and an actual intention to relinquish it, or conduct so inconsistent with the intent to enforce the right as to induce a reasonable belief that it has been relinquished." *Tate v. Charles Aguillard Ins. & Real Estate, Inc.*, 508 So. 2d 1371, 1374 (La. 1987).  Because Defendants expressly refused to honor the assignment of the Subcontract on more than one occasion, they cannot be said to have waived their right to withhold consent to assignment. (*See* Doc. 8-3 at p. 3).

## IV.   CONCLUSION

Accordingly,

**IT IS ORDERED**, that Defendants' **MOTION FOR SUMMARY JUDGMENT (Doc. 8)** is **GRANTED.**  Plaintiff's claims against DQSI and Western Surety are **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that Defendants' request that costs be assigned to Plaintiff is **DENIED WITHOUT PREJUDICE** to refile. If they so

choose, Defendants shall file their request for costs within thirty (30) days of receiving notice of judgment, in accordance with this Court's local rules. *See* M.D. La. LR54.3.

Baton Rouge, Louisiana, this ____31ˢᵗ____ day of March, 2014.

**BRIAN A. JACKSON, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**