UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA            CIVIL ACTION
EX REL. SUN COAST CONTRACTING
SERVICES, LLC, ET AL.

VERSUS

DQSI, LLC, ET AL.            NO.: 13-00297-BAJ-RLB

## RULING AND ORDER

Before the Court are Defendants' **MOTION FOR SUMMARY JUDGMENT AND MOTION TO DISMISS (Doc. 27),** seeking an order dismissing Plaintiff's federal law claim with prejudice and thereafter dismissing remaining supplemental claims, pursuant to Federal Rule of Civil Procedure ("Rule") 56.[1] (*Id.* at 8). Defendants oppose the motion. (Doc. 29). Oral argument is not necessary. The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

### I. BACKGROUND

In March 2010, the United States of America entered into a prime contract with Defendant DQSI, LLC ("DQSI") for "Northwest Guidewall Replacement and New Dolphins" at Bayou Sorrel Lock in the Atchafalaya Basin Floodway ("the project"). (Civil Action 13-00720-BAJ-RLB, Doc. 1 at ¶ 5). Defendant Western

---

[1] Plaintiff is United States of America *ex rel.* Gulf/Inland Contractors, Inc. ("Gulf Inland"). On November 5, 2013 Gulf Inland filed a complaint in Civil Action 13-00720-BAJ-RLB, against Defendants DQSI, LLC; Western Surety Company; Sun Coast Contracting Services, LLC; and the Hanover Insurance Company. On January 23, 2014, Civil Action 13-00720-BAJ-RLB was consolidated, along with Civil Action 13-00568-BAJ-RLB, into the instant case. All document reference numbers refer to the consolidated docket of this matter, above-captioned, unless otherwise noted.

Surety Company, Inc. ("Western Surety") provided a payment bond to serve as surety for the project. (*See* Civil Action 13-00720-BAJ-RLB, Doc. 1-1 at Exhibit 1). DQSI later entered into a subcontract for the project with Sun Coast Contracting, LLC ("Sun Coast Contracting"), for which the Hanover Insurance Company ("Hanover Insurance") provided performance bonds on behalf of Sun Coast Contracting. (*See id.* at Exhibits 2–4). Later, on October 24, 2012, Plaintiff entered into a subcontract agreement with Defendant Sun Coast Contracting Services, LLC ("SCCS"),[2] regarding the project. (*See id.* at p. 17). Plaintiff provided labor and materials to SCCS from October 27, 2012 to November 15, 2012. (Doc. 29 at p. 2). Plaintiff's invoices for the project total $144,269.50. (Civil Action 13-00720-BAJ-RLB, Doc. 1-1 at Exhibit 6). Plaintiff has not alleged that it contracted with anyone but SCCS in connection with the project.

As to the instant case, Plaintiff Gulf Inland alleges that it "has not been paid for supplying all necessary labor and equipment to repair the damaged finder wall system." (Civil Action 13-00720-BAJ-RLB, Doc. 1 at ¶ 9). Plaintiff filed suit against Defendants DQSI, Western Surety, SCCS, and Hanover Insurance, alleging six causes of action: (1) the Miller Act, 40 U.S.C. § 3131–3134; (2) breach of contract; (3) open account pursuant to La. R.S. § 9:2781; (4) penalties pursuant to R.S. § 9:4814; (5) detrimental reliance; and (6) unjust enrichment. (*See generally id.*).

---

[2] In or around December 2010, Sun Coast Contracting sold its assets to IPS Group, LLC. (Doc. 1 at ¶ 14). Thereafter, IPS formed a new wholly-owned subsidiary, named Sun Coast Contracting Services, LLC, whose initial capital contribution was derived from the contracts and licenses IPS purchased from Sun Coast Contracting. (*See id.*).

2

In response, Defendants filed the instant motion. Defendants argue that Plaintiff does not satisfy the statutory requirements to bring a claim under the Miller Act and has no remaining claims that would give rise to federal court jurisdiction. (Doc. 27). Plaintiff opposes the motion, arguing that the Miller Act claim is valid and, in the alternative, raises various arguments as to why this Court retains jurisdiction over its other claims. (Doc. 29). Upon being granted leave by this Court, Defendants filed a Reply Memorandum in further support of their Motion for Summary Judgment. (Doc. 50).

## II. STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). After a proper motion for summary judgment is made, the non-movant must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "This burden is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (quotation marks and citations omitted). In determining whether the movant is entitled to summary judgment, the Court "view[s] facts in the light most favorable to the non-movant and draw[s] all reasonable inferences in her favor." *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997).

In sum, summary judgment is appropriate if, "after adequate time for discovery and upon motion, [the non-moving party] fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

### III. LAW AND ARGUMENT

#### A. Jurisdiction Under the Miller Act

The first count of Plaintiff's complaint alleges that DQSI and Western Surety are liable to Plaintiff under the Miller Act, for the full amount of its charges, plus interest and costs. (Civil Action 13-00720-BAJ-RLB, Doc. 1 at ¶ 10). Plaintiff alleges that it contracted directly with SCCS, a subcontractor for DQSI in the project. (*See id.* at ¶ 9). Plaintiff, however, has not alleged a contractual relationship with DQSI or with Western Surety.

In contracts for which payment bonds are furnished under the Miller Act, a person having a direct contractual relationship with a subcontractor but no direct relationship with the contractor furnishing the payment bond has a right to bring a civil action in accordance with 40 U.S.C. § 3133(b)(2):

> [O]n giving written notice to the contractor within 90 days from the date on which the person did or performed the last of the labor or furnished or supplied the last of the material for which the claim is made. The action must state with substantial accuracy the amount claimed and the name of the party to whom the material was furnished or supplied or for whom the labor was done or performed. The notice shall be served—
>
> (A) by any means that provides written, third-party verification of delivery to the contractor at any place the contractor maintains an

4

  office or conducts business or at the contractor's residence; or

 (B) in any manner in which the United States marshal of the district in which the public improvement is situated by law may serve summons.

"The giving of such notice is a condition precedent to a supplier's right to sue on the payment bond." *Liles Const. Co. v. United States*, 415 F.2d 889, 890 (5th Cir. 1969).

Plaintiff contends that it provided services to SCCS for the project from October 27, 2012 to November 15, 2012 and is owed $144,269.50 for the work it performed. (Doc. 29 at p. 2). Plaintiff concedes that it "did not provide timely notice to DQSI on its own." (*Id.* at p. 3). Instead, Plaintiff asserts that its notice was given to DQSI by virtue of SCCS's timely notice sent to DQSI. (*See id.*).

In support of this argument, Plaintiff points to a letter from SCCS to DQSI, dated February 14, 2013. This letter, in relevant portion, reads: "Sun Coast [SCCS] supplied labor and materials to the general contractor, DQSI, LLC, in the amount of $1,698,695.00 used in the construction of [the project]. DQSI has failed to pay Sun Coast this amount." (*Id.* at Exhibit B). Plaintiff asserts that the amount of $1,698,695.00 specified by SCCS includes the amount owed to Plaintiff. (*Id.* at p. 3). Yet SCCS's letter does not mention any subcontractor, nor does it include a breakout amount that might be owed to someone other than SCCS. Even when the Court draws all reasonable inferences in Plaintiff's favor, the language in the letter cannot be said to have provided notice to DQSI that Plaintiff had any amount claim against it.

5

In addition to this letter from SCCS, Plaintiff points to the Affidavit of Eugene J. Caro, Jr., the president of Gulf Inland, which states that "[t]he $144,269.50 owed by Sun Coast to Gulf Inland is part of the $1,694,576.56 that was demanded by Sun Coast in its original complaint." (*Id.* at p. 6). This affidavit was dated March 10, 2014, well after the ninety-day notice window available to Plaintiff after it stopped providing services for the project on November 15, 2012. The affidavit does not provide evidence in support of Plaintiff's assertion that it provided *timely* notice that would preserve its claim under the Miller Act.

Plaintiff contends that this Court should liberally construe the Miller Act to effectuate the remedial purpose of the statute. Indeed, controlling case law has afforded some degree of flexibility to the form in which subcontractors may communicate notice under 40 U.S.C. § 3133(b)(2). In interpreting this part of the Miller Act, it is well-settled that "the purpose of this provision as to manner of service was to assure receipt of the notice, not to make the described method mandatory so as to deny right of suit when the required written notice within the specified time had actually been given and received." *Fleisher Eng'g & Constr. Co. v. U.S., for Use & Benefit of Hallenbeck*, 311 U.S. 15, 19 (1940). *See also U.S. for Use of Consol. Elec. Distributors, Inc. v. Altech, Inc.*, 929 F.2d 1089, 1093 (5th Cir. 1991) (holding that oral discussion between supplier and contractor, followed by contractor's letter acknowledging demand for payment, was sufficient notice).

However, when applying the statute to parties who have direct relationships with subcontractors but not with contractors, no court has waived the notice

6

requirement as a condition precedent to a Miller Act claim.[3] While affirming the notion that the provisions of the notice requirement should be construed liberally in the *method* by which notice is given, the Fifth Circuit has maintained that, regarding the *content* of notice, "[i]t is crucial that the notice state a claim directly against the general contractor, that the claim be stated with some specificity of amount due, and that the claim specify the subcontractor allegedly in arrears." *U.S. for Use & Benefit of Jinks Lumber Co. v. Fed. Ins. Co.*, 452 F.2d 485, 488 (5th Cir. 1971). *See also Houston Fire & Cas. Ins. Co. v. U.S. for Use & Benefit of Trane Co.*, 217 F.2d 727, 730 (5th Cir. 1954) (finding statutory compliance when "the nature and state of the indebtedness was brought home to the general contractor"). "The reason for such a limitation is obvious. Contractors should not be compelled to wait around with their liabilities unknown or unsettled for an indefinite length of time, at the convenience of those who may wish to give notice of a claim." *U.S. for Use & Benefit of Light & Power Utilities Corp. v. Liles Const. Co.*, 440 F.2d 474, 478 (5th Cir. 1971).

Beyond SCCS's letter, whose content did not even allude to the existence of a claim by Plaintiff, Plaintiff has not put forth any assertion that it communicated its claim to DQSI within ninety days after the date of Plaintiff's last performance on the project. By failing to provide proper notice according to statutory requirements,

---

[3] In urging this Court to essentially ignore altogether the statute's notice requirement, Plaintiff even admits that "there are no cases directly on point." (Doc. 29 at p. 3). Plaintiff cites *F.D. Rich Co. v. United States for Use of Indus. Lumber Co.*, 417 U.S. 116 (1974), as support for this Court's generally liberal statutory construction. But the adequacy of notice was not a contested issue in *F.D. Rich Co.* In fact, the U.S. Supreme Court in that case specified that the timeliness of notice was not an issue properly before the Court and assumed for its analysis that the subcontractor complied with statutory requirements. *See id.* at 120 n.6.

Plaintiff has no right to sue Defendants DQSI or Western Surety under the Miller Act. Accordingly, Defendants' motion for summary judgment regarding Plaintiff's cause of action arising under the Miller Act is **GRANTED**.

### B. Supplemental Jurisdiction

Without a cause of action arising under the Miller Act, Plaintiff's remaining claims (breach of contract, open account and penalties pursuant to Louisiana statutes, and detrimental reliance) against Defendants DQSI, Western Surety, SCCS, and Hanover Insurance, all arise under state law. In *Arena v. Graybar Electric Company*, 669 F.3d 214 (5th Cir. 2012), the Fifth Circuit addressed a similar case in which the plaintiff, Arena, brought suit under the Miller Act as well as related Lousiana state-law claims. Once Arena's claim under the Miller Act was dismissed, the Fifth Circuit held that the court lacked supplemental federal question jurisdiction to adjudicate the remaining claims. "Without original jurisdiction on the federal claim, the court cannot assert jurisdiction over state-law claims, even if those claims derive from a common nucleus of operative facts." *Id.* at 222.

Plaintiff argues that *Arena* is distinguishable from the instant case because the instant matter has been consolidated with two other matters into a single docket. Plaintiff's position is that this Court retains subject matter jurisdiction over remaining state-law claims because the original complaint in this consolidated action, the Miller Act claim by SCCS, gives rise to federal question jurisdiction.

Although consolidation offers a measure of judicial efficiency for adjudicating related cases, it does not meld cases together such that they are inseparable. "[C]onsolidation does not cause one civil action to emerge from two; the actions do not lose their separate identity; the parties to one action do not become parties to the other." *McKenzie v. United States*, 678 F.2d 571, 574 (5th Cir. 1982). In other words, the analysis of the Court's jurisdiction over one matter does not differ based on the characteristics of other matters that may be consolidated into the same docket.

Without its Miller Act claim, Plaintiff's remaining claims have no anchor for supplemental federal question jurisdiction. In addition, Plaintiff has not alleged diversity jurisdiction. Therefore, no basis exists to support the exercise of subject matter jurisdiction by this Court. Accordingly, Defendants' motion that the Court dismiss all remaining claims in this matter is **GRANTED**.

### IV. CONCLUSION

Accordingly,

**IT IS ORDERED** that Defendants' **MOTION FOR SUMMARY JUDGMENT AND MOTION TO DISMISS (Doc. 27)** are both **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's claims against Defendants DQSI, Western Surety, SCCS, and Hanover Insurance, are **DISMISSED WITH PREJUDICE.**

Baton Rouge, Louisiana, this 21st day of October, 2014.

_____
**BRIAN A. JACKSON, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**