UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA                          CIVIL ACTION
EX REL. SUN COAST CONTRACTING
SERVICES, LLC, ET AL.

VERSUS

DSQI, LLC, ET AL.                              NO.: 13-00297-BAJ-RLB

RULING AND ORDER

Before the Court are separate motions to dismiss filed by Defendant Western

Surety Company, Inc. ("Western") (Doc. 92) and Defendant DQSI, L.L.C. ("DQSI,

LLC") (Doc. 93)[1] seeking dismissal of Plaintiff Sun Coast Contract Services, L.L.C.'s

("SCCS") first supplemental and amended complaint ("amended complaint") (Doc.

81). Western seeks dismissal pursuant to Federal Rules of Civil Procedure ("Rule")

12(b)(6). Should Western prevail on its motion, DQSI, LLC seeks dismissal pursuant

to Rule 12(b)(1). For the reasons explained herein, Defendants' motions are **DENIED**.

### I.    Background

On or about March 10, 2010, the U.S. Army Corps of Engineers ("USACE")

entered into a prime contract to complete work on the Bayou Sorrel Lock in the

Atchafalaya Basin Floodway ("the project"). (Doc. 1 at ¶ 10). On May 5, 2013, SCCS

filed its first complaint against DQSI, LLC and Western, wherein it asserted that

DQSI, LLC furnished performance and payment bonds on the project as the prime

---

[1] Western and DQSI, LLC are referred to collectively as "Defendants."

1

contractor in compliance with the Miller Act, with Western serving as surety. (*Id*.).
SCCS further asserted that it was owed payment for materials, labor, and supplies
furnished to DQSI, LLC in performing the prime contract. (*Id*. at ¶ 39). On December
17, 2014, the Court determined that SCCS can continue to maintain a Miller Act
claim and its claim for unjust enrichment against Defendants, notwithstanding
Defendants' assertion that SCCS was improperly assigned rights under a subcontract
that existed between DQSI, LLC and SCCS's alleged predecessor in interest, Sun
Coast Contracting, LLC.[2] (*See* Docs. 56, 61).

On April 22, 2015, SCCS filed its amended complaint wherein it asserts that
that the prime contract may have been improperly awarded to DQSI Corporation
("DQSI, Corp.").[3] (Doc. 81 at ¶¶ 12—18). SCCS further asserts that DQSI, LLC
submitted an offer on the project to the USACE on March 29, 2010, even though it
was not an 8(a) qualified firm as required. (*Id*. at ¶¶ 15—17, 45—46). SCCS further
claims that DQSI, LLC used the DUNS (Data Universal Number System) of DQSI,
Corp. when it submitted its offer to the USACE. (*Id*. at 45—46). Creating even more
confusion, SCCS claims that as late as March 30, 2010, the USACE issued work

---

[2] SCCS asserts that in or around December 2010, Sun Coast Contracting, LLC sold its assets to IPS Group, LLC ("IPS"). (Doc. 1 at ¶ 14). Thereafter, IPS formed a wholly-owned subsidiary, SCCS, whose initial capital contribution was derived from the contracts and licenses IPS purchased from Sun Coast Contracting. (*See id*.). It remains disputed whether SCCS is a true successor-in-interest to Sun Coast Contracting, an issue the Court has specifically declined to address at this point. (Doc. 31 at p. 4 n.3).

[3] The Court is troubled that the party submitting an amended complaint would later admit that it is "difficult to follow . . ." (*See* Doc. 118 at p. 12). To say that the amended complaint was inartfully pled would be an understatement.

orders to DQSI, Corp. even though it ceased to exist as a corporate entity as of September 1, 2009. (*Id.* at ¶ 47).

Given these irregularities, the amended complaint asserts that if the prime contract was in fact awarded to DQSI, Corp., it was an "absolute nullity" that was "void *ab initio.*"[4] (*Id.* at ¶¶ 15, 63—64). Consequently, SCCS asserts that it added a separate claim against Western in count two that was pled in the alternative "should it be found that the contract was, in fact, awarded to DQSI Corporation."[5] (Doc. 81 at ¶¶ 62—71; Doc. 118 at p. 11). SCCS asserts that the amended complaint maintains its claim against DQSI, LLC and Western under the theory that it was DQSI, LLC that contracted with the USACE and was paid by the USACE to complete the project. (Doc. 81 at ¶¶ 55—61; Doc. 118 at pp. 10—11).

Prior to the filing of SCCS's amended complaint, the parties did not dispute that DQSI, LLC was the entity that entered into the aforementioned prime contract, and that Western acted as surety on the Miller Act performance and payment bonds furnished in connection with the prime contract. (*See* Doc. 8-16 at ¶¶ 1—19; *See* Doc. 31 at pp. 1—2). The parties also did not dispute that DQSI, LLC entered into a subcontract with SCCS's alleged predecessor in interest,[6] or that work was performed pursuant to the subcontract. (Doc. 8-1 at pp. 2—4; Doc. 8-16 at ¶¶ 3—19).

---

[4] There is some ambiguity in the amended complaint as to whether SCCS asserts that a prime contract between the USACE and DQSI, LLC would similarly constitute an absolute nullity, because DQSI, LLC also did not meet the qualifications required by the USACE.

[5] SCCS clarified this point in its opposition, during oral argument, and in supplemental briefing.

[6] *See* note 2, *supra.*

## II.    Standard of Review[7]

A motion to dismiss under Federal Rule of Civil Procedure ("Rule") 12(b)(6) tests the sufficiency of the complaint against the legal standard set forth in Rule 8, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). On a Rule 12(b)(6) motion, a district court generally "must limit itself to the contents of the pleadings, including attachments thereto." *See Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. "[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (*Twombly*, 550 U.S. at 556).

Hence, the complaint need not set out "detailed factual allegations," but something "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action" is required. *Twombly*, 550 U.S. at 555. When conducting

---

[7] As indicated, DQSI LLC's motion to dismiss pursuant to Rule 12(b)(1) rests on the success of Western's motion pursuant to Rule 12(b)(6). Because of the conclusions set forth, *infra*, the Court does not set forth the standard applicable to motions to dismiss pursuant to Rule 12(b)(1).

its inquiry, the Court must "accept[] all well-pleaded facts as true and view[] those facts in the light most favorable to the plaintiff." *Bustos v. Martini Club Inc.*, 599 F.3d 458, 461 (5th Cir. 2010) (quotation marks omitted).

The Supreme Court has noted that Rule 12(b)(6) requires dismissal whenever a claim is based on an invalid legal theory:

> Nothing in Rule 12(b)(6) confines its sweep to claims of law which are obviously insupportable. On the contrary, if as a matter of law it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations . . . a claim must be dismissed, without regard to whether it is based on an outlandish legal theory, or on a close but ultimately unavailing one.

*Neitzke v. Williams*, 490 U.S. 319, 327 (1989) (quotation marks and citations omitted). However, "[f]ederal pleading rules . . . do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. ___, ___, 135 S. Ct. 346, 346 (2014) (per curiam).

### III. Defendants' Motions

With potential irregularities in the bid process related to the project now identified, Western seeks dismissal pursuant to Rule 12(b)(6) on the basis of SCCS's own allegation—set forth in its amended complaint—that the prime contract was "absolutely null" and "void *ab initio*." (Doc. 92-1 at pp. 1, 3—12). Western asserts that SCCS has "pled itself out of a Miller Act claim" because a payment bond is invalid if the prime contract for which it is furnished is, as alleged by SCCS, null. (Doc. 92-1 at pp. 3—4; Doc. 150 at p. 1). Western further asserts that the allegation that the prime

contract is null was not pled as part of an alternative argument, and as a result, it is dispositive as to all of SCCS's claims against it.[8] (*Id.*).

To support its position, Western relies upon language of the Miller Act, which Western asserts contemplates that a payment bond exists to secure payment for work performed pursuant to a prime contract; if the prime contract is null, Western asserts that the payment bond cannot be binding. (*Id.* at pp. 6—9). Western also argues that the payment bond is a contract of suretyship under Louisiana law, and as an accessory right or obligation, it cannot exist without a primary obligation. (*Id.*). Again, because the amended complaint asserts that the prime contract was "void *ab initio*," Western argues that Louisiana law also requires dismissal of SCCS's lawsuit.

After Western filed its motion, DQSI, LLC filed its motion pursuant to Rule 12(b)(1), asserting that dismissal of SCCS's Miller Act claim would deprive the Court of jurisdiction over any remaining state law claims set forth in the amended complaint.

## IV.  DISCUSSION

The narrow issue Western presents in its motion to dismiss is whether SCCS's own allegation that the prime contract was absolutely null defeats SCCS's claims against it, even though Western admits that it acted as surety on a Miller Act payment bond related to the  project. When viewed in a light most favorable to SCCS, the Court finds that any defect in the amended complaint resulting from poor drafting is not fatal to SCCS's lawsuit. Western reads SCCS's statements regarding the nullity

---

[8] Western further suggests that SCCS cannot maintain separate claims that are based on contradictory factual assertions. (Doc. 150 at p. 4).

of the prime contract in isolation[9]; although the amended complaint lacks clarity, the Court is satisfied that it sets forth sufficient factual matter, accepted as true, to state a plausible claim for relief against Western as surety on a payment bond furnished for a prime contract between the USACE and DQSI, LLC, or alternatively, for a prime contract that was purportedly between the USACE and DQSI, Corp. (*See id.* at p. 7). *See Whitener v. Pliva, Inc.*, No. 10-cv-1552, 2010 WL 3021866, at \*2 (E.D. La. July 29, 2010) (alternative theories of recovery permitted where plaintiff alleged that the defendant was either a manufacturer or a seller of medication in a products liability action). SCCS was placed in a difficult position: amend its complaint by adding DQSI, Corp. and explain the attendant—and confusing—factual reasons for doing so, or risk protracted litigation without having identified a possible proper defendant. (*See* Doc. 118 at p. 5). Because SCCS's factual assertions create uncertainty as to which DQSI entity was awarded the prime contract, which DQSI entity signed the prime contract, and which DQSI entity performed the work required under the prime contract, Western's contention that SCCS has "pled itself out of a Miller Act claim" is simply too facile for the Court to sanction at this stage of this proceeding.[10]

And even if the Court were to find that the allegations made in the amended complaint were not pled in the alternative, Western has nonetheless failed to

---

[9] Western would have the Court find that SCCS has been, to quote Shakespeare, "hoist with [its] own petard," WILLIAM SHAKESPEARE, HAMLET, act 3, sc. 4, simply because it asserts, as part of what the Court reads as an alternative theory of recovery, (Doc. 118 at p. 7), that the prime contract was null vis-à-vis DQSI, Corp. as a consequence of the irregularities described, *infra*.

[10] In supplemental briefing, SCCS again describes the confusion surrounding the award of the prime contract: "As noted, while DQSI, LLC submitted the offer to [the] USACE that was accepted for this work, the contract was 'awarded' to DQSI Corporation and the USACE contends that its contractor was DQSI Corporation." (Doc. 151 at p. 4).

demonstrate that dismissal is proper under the relaxed Rule 12(b)(6) standard. Western points to the following language of the Miller Act to support its contention that the payment bond is unenforceable if the prime contract is null:

> (b) Types of bonds required. Before any contract of more than $100,000 is awarded for the construction, alteration, or repair of any public building or public work of the Federal Government, a person must furnish to the Government the following bonds, **which become binding when the contract is awarded:**
>
> \*        \*        \*
>
> (2) Payment Bond. A payment bond with a surety satisfactory to the office for the protection of all persons supplying labor and material in carrying out **the work provided for in the contract** for the use of each person. The amount of the payment bond shall equal the total amount payable by the terms of **the contract** unless the officer awarding **the contract** determines, in a writing supported by specific findings, that a payment bond in that amount is impractical . . .

(Doc. 92-1 at p. 7) (emphasis supplied in Western's brief). Yet it is of no moment to the Court that the Miller Act requires a bond to be furnished in connection with a prime contract; this is not a profound observation. To read into this language, however, that irregularities in the bidding process of a prime contract, without more, render an otherwise valid payment bond *per se* unenforceable under these circumstances is to distill a legal fiction that belies the policy considerations underlying the Miller Act.[11] *See Clifford F. MacEvoy Co. v. U.S. for Use & Benefit of Calvin Tomkins Co.*, 322 U.S. 102, 107 (1944) (holding that "[t]he Miller Act is . . . highly remedial in nature. It is entitled to a liberal construction and application in

---

[11] In an opposing view, SCCS asserts that a valid Miller Act claim is coextensive with the existence of a Miller Act bond and not the existence of a valid prime contract.

order properly to effectuate the Congressional intent to protect those whose labor and materials go into public projects'"). At the very least, SCCS's factual assertions indicate that a putative contract was awarded in this case under which work was performed, and Western availed itself of the benefits of guaranteeing payment of that work under the prevailing facts then known to the parties.[12] Without reaching a determination on the merits, the Court finds that SCCS has set forth sufficient factual matter, accepted as true, to state a plausible claim for relief against Western as surety even if the prime contract at issue was flawed.

Western's reliance on the Louisiana law of suretyship to support its contention that its bond is null if the prime contract is null is similarly unpersuasive. As Judge Lemmon of the United States District Court for the Eatern District of Louisiana recently recognized:

> [S]tate-law suretyship principles that conflict with the terms and purpose of the Miller Act are inapplicable. *Walton Tech.*, 290 F.3d at 1206. The Miller Act allows a subcontractor to bring an action for any amount unpaid. 40 U.S.C. § 3133(b). The purpose of the Miller Act is to protect subcontractors who work on federal projects because state-law liens cannot be applied against federally-owned property and traditional state-law remedies are unavailable. *Arena*, 669 F.3d at 220.

*J&B Boat Rental, LLC v. JAG Const. Servs., Inc.*, No. 12-cv-323, 2015 WL 2376004, at *6 (E.D. La. May 18, 2015). While the Court may find aspects of the Louisiana law on suretyship instructive where federal law is silent, the Court is nonetheless not

---

[12] The Court notes that to the extent Western was somehow prejudiced by bid irregularities or inadvertence, it appears likely that such irregularities may be attributable to its own purported principal.

9

bound to apply state law limitations on contracts of suretyship in the context of a Miller Act claim. *Id.*

The Court finds that SCCS's claims against Western as surety of the Miller Act payment bond furnished in connection with the project survive Western's Rule 12(b)(6) motion to dismiss. Because SCCS still has a viable Miller Act claim, DQSI, LLC's argument that federal question jurisdiction no longer exists in this matter is without merit.

### V.    Conclusion

For the foregoing reasons:

**IT IS HEREBY ORDERED** that the **Motion to Dismiss all Claims Against Western Surety Company (Doc. 92)** filed by Defendant Western Surety Company, Inc. is **DENIED**.[13]

**IT IS FURTHER ORDERED** that the **Motion to Dismiss (Doc. 93)** filed by Defendant DQSI, L.L.C is **DENIED**.

Baton Rouge, Louisiana, this 4th day of February, 2016.

**BRIAN A. JACKSON, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[13] On its first grant of summary judgment, the Court denied reconsideration of its dismissal of the original counts of detrimental reliance and equitable estoppel set forth in SCCS's original complaint. SCCS has not provided a new basis for a re-pleading of these counts. (*See* Docs. 31, 56, 61). This Ruling and Order does not breathe new life into those two counts.